**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANDRE LANE,<br><br>              Plaintiff,<br><br>       vs.<br><br>ROBERT WILKIE, Secretary, Department of Veterans Affairs,<br><br>              Defendant. | Case No. 3:19-cv-1918-LAB-MSB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT [Dkt. 24]** |

Andre Lane, a secretary working for the Department of Veterans' Affairs (the "VA"), suffers from post-traumatic stress disorder, anxiety, and depression. Because these conditions were interfering with his job performance, he asked the VA for several accommodations. Over a nineteen-month dialogue, the VA granted some of his requests, but it didn't give him everything he wanted. Lane filed an Equal Employment Opportunity complaint, and three months later, he received a negative performance review citing longstanding performance issues that hadn't warranted a negative review before.

Lane alleges that the VA's denial of his requests for accommodation was discriminatory, and that his negative performance review was retaliatory. He also claims that the VA subjected him to a hostile work environment and failed

to engage in the interactive accommodation process.

Because there are genuine disputes over whether Lane's negative review was retaliatory and whether the VA discriminated against Lane in failing to accommodate his request for a flexible start time, the Court denies the VA's Motion for Summary Judgment as to those claims. But Lane hasn't offered evidence to support any other bases for his discrimination and failure to accommodate claims, nor has he identified a genuine factual dispute over the existence of a hostile work environment, so the Court grants the Motion as to those claims. And because federal law doesn't provide a standalone claim for failure to engage in the accommodation process, the VA is entitled to judgment as a matter of law on that claim, too.

## Background

Beginning in December 2004, Andre Lane worked at the VA Medical Center in San Diego as a Secretary in the Radiology Department. After experiencing conflict with his supervisor, Charlene Godbold, Lane filed a union grievance against her and requested a transfer to a new supervisor. He received that transfer in February 2017, when he began working under Tricia Schabbehar, who moved him to a new office closer to hers.

The next month, he requested accommodation for his disability due to post-traumatic stress disorder, anxiety, and depression. Lane's briefing discusses three potential accommodations. First, Schabbehar had moved Lane to an office closer to her; Lane asked to be moved back to his former private office. Second, he asked for a flexible start time between 8:00 and 10:00 a.m. each day. And third, at some point after Schabbehar became his supervisor, Lane told her that he was interested in transferring to a different department.

Over months of written and in-person discussions, the VA offered Lane a start time of 7:45 each morning, but no later, and offered to put him in a

different private office. Lane declined that office—according to his medical provider, its proximity to Godbold's office exacerbated his symptoms. There's no indication that the discussions included Lane's interest in transfer, but he remained in the Radiology Department throughout. Lane then brought his concerns to an Equal Employment Opportunity Counselor and filed an EEO Complaint in June 2018.

That September, Lane sat down with Schabbehar for a performance review. Although Lane had long struggled to fulfill his timekeeping duties, he had received a rating of at least "Fully Successful" for several years prior. But this time, Schabbehar rated Lane "Needs improvement to be Fully Successful," relying primarily on the same timekeeping issues. The next month, Lane again requested accommodations—some requests were new, but others were functionally identical to his earlier requests. When the VA denied the October 2018 requests, Lane took a month of leave, returned briefly, and then resigned on November 25, 2018. He brought this action against the VA Secretary, a position then held by Robert Wilkie and now held by Denis McDonough. The VA now moves for summary judgment on all of Lane's claims.

## Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to Lane, but "bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). The moving party can meet its burden by merely "pointing out to the district court [ ] that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also* Fed. R. Civ. P. 56(c)(1)(B). The nonmovant must then demonstrate that a fact is genuinely

- 3 -
19cv1918-LAB-MSB

disputed by "citing to particular parts of materials in the record . . .; or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1), (2).

## Analysis

### I. The Rehabilitation Act Doesn't Create a Claim for Failure to Engage in the Interactive Process

Lane's Complaint seeks to impose liability for failure to engage in the Rehabilitation Act's required interactive process. 29 U.S.C. § 794. But such a failure, if proven, wouldn't support a standalone claim.[1] Instead, it would shift the summary judgment burden on Lane's claim for failure to accommodate: the VA would need to prove the unavailability of a reasonable accommodation. *See Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002) (employer failing to engage in interactive process in Rehabilitation Act case "may incur liability if a reasonable accommodation would have been possible") (cleaned up); *Snapp v. United Transportation Union*, 889 F.3d 1088, 1095 (9th Cir. 2018) (failure to engage in interactive process under ADA shifts summary judgment burden).

Lane relies on *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128 (9th Cir. 2001), to argue otherwise, but that case doesn't support his position. There, the Ninth Circuit held that a failure to engage in the interactive process made "liability . . . appropriate *if a reasonable accommodation without undue hardship to the employer would otherwise have been possible*." *Id.* at 1139 (emphasis added). In other words, a failure to engage isn't enough to establish liability on its own.

Because failure to engage in the interactive process isn't a claim upon which relief can be granted, the VA is entitled to judgment as a matter of law and the Motion is **GRANTED** as to that claim.

---

[1] As discussed below, Lane hasn't pointed to anything in the record to support the contention that the VA didn't engage in the interactive process.

## II. Hostile Work Environment

The VA is entitled to judgment as a matter of law on Lane's hostile work environment claim. To prevail on his claim, Lane must show: "(1) that he was subjected to verbal or physical conduct of a . . . nature [directed to the protected characteristic]; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the [his] employment and create an abusive work environment." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). Hostile attitudes or general incivility aren't enough. The "verbal or physical conduct" that would support such a claim must make the workplace environment "objectively and subjectively *offensive*." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (emphasis added), citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21–22 (1993).

Lane argues that the conduct need not be verbal or physical—retaliatory conduct can establish a hostile work environment, too. But he relies on *Ray v. Henderson*, 217 F.3d 1234 (9th Cir. 2000), which doesn't support that argument. In *Ray*, the Ninth Circuit held that a retaliation claim could be supported with evidence of a hostile work environment. *Id.* at 1245. Lane reads *Ray* backwards, trying to support his hostile work environment claim with evidence of retaliation. *Ray* isn't relevant to Lane's hostile work environment claim.

Only verbal or physical conduct will do, then. The only evidence he identifies of such conduct is another employee's testimony that Schabbehar "shame[d]" or "ridicule[d]" Lane. But there's no indication that the shaming or ridicule were related in any way to Lane's disability, and thus "offensive." *Faragher*, 524 U.S. at 787. Nor is there evidence that Schabbehar's shaming and ridicule were severe or pervasive enough to create an abusive work environment. (*See* Menogue Dep. Tr., Dkt. 26-1 Ex. C at 39:1–40:12.)

The other conduct Lane relies on is a series of management decisions, such as the refusal to return Lane to his former office. (*See* Dkt. 26 at 9.) These actions may have made his work unpleasant and inconvenient, but they aren't the verbal or physical conduct necessary to support a legal claim for hostile work environment. *See Vasquez*, 349 F.3d at 642.

With no evident verbal or physical conduct going beyond "the ordinary tribulations of the workplace," *id.*, Lane hasn't established a genuine material dispute on his hostile work environment claim. The Motion is **GRANTED** as to that claim.

### III.   Discrimination and Failure to Accommodate[2]

Lane fails to establish a genuine question of fact as to most, but not all, bases for his discrimination claim. A discrimination claim under the Rehabilitation Act requires the plaintiff to prove that he has a disability, is otherwise qualified for employment, and suffered an adverse action because of his disability. *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001) (elements of discrimination under Americans with Disabilities Act); *see also* 29 U.S.C. § 794.

There's no dispute over Lane's disability or his qualification for employment. The parties dispute instead the adverse action prong, which Lane seeks to satisfy with the VA's purported failure to accommodate his disability.

---

[2] Lane's Complaint asserts separate claims for discrimination and failure to accommodate, both under the Rehabilitation Act. That statute doesn't expressly proscribe the failure to accommodate an employee's disability, but such a failure can be discrimination that the Rehabilitation Act prohibits. *See Zukle v. Regents of the Univ. of Calif.*, 166 F.3d 1041, 1045–46 (9th Cir. 1999). Because Lane relies on the failure to accommodate and his constructive termination theory (which the Court rejects in this Order) to support his discrimination claim and because he conflates the discrimination and failure to accommodate claims in his briefing, the Court treats the Complaint's discrimination and failure to accommodate claims as one.

An employer subject to the Rehabilitation Act must make reasonable accommodations that would enable its qualified employee to perform the essential functions of the position. *See* 28 C.F.R. § 35.130(b)(7) (2016); *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002).

Lane first bears the burden of "show[ing] that an accommodation *seems reasonable on its face*, i.e., ordinarily or in the run of cases." *Dark v. Curry County*, 451 F.3d 1078, 1088 (9th Cir. 2006) (cleaned up, emphasis in original), quoting *U.S. Airways v. Barnett*, 535 U.S. 391, 401–02 (2002). He must do more than identifying the accommodation—a plaintiff must show that, "ordinarily or in the run of cases," such an accommodation would "impose[] no fundamental alteration in the nature of the program or undue financial or administrative burdens." *Giebeler v. M & B Associates*, 343 F.3d 1143, 1157 (9th Cir. 2003). If Lane succeeds, the burden shifts to the VA to produce evidence that the requested accommodation wasn't reasonable. *Dark*, 451 F.3d at 1088. But as discussed above, failure to engage in the process shifts the burden on summary judgment to the employer to prove the unavailability of a reasonable accommodation. *See Snapp*, 889 F.3d at 1095.

*A. The VA Participated in the Interactive Process*

Lane doesn't establish that the VA failed to participate in the interactive process. At a November 2017 meeting between the VA, Lane, and his counsel "and at all subsequent meetings," Lane asserts, the VA told him that "the only purpose of the meeting was [for Lane to offer his] suggestions for accommodation" and didn't "offer[] any input into the accommodation process." (Lane Decl., Dkt. 26-3 at ¶¶ 10–11.) But those meetings aren't the entirety of the VA's participation in the process. The VA's written communications provide alternatives to Lane's denied requests, seek more information as needed, and follow up on the VA's information requests that didn't receive a response. (*See, e.g.,* Dkt. 24-2 at MSJ 298–99, 312–20, 325–30; 333–35.) This evidence of the

VA's participation in the interactive process won't permit the Court to shift the summary judgment burden to the VA.

### B. Lane Establishes a Genuine Fact Issue as to One Accommodation

Lane points to three denied accommodations: 1) a flexible start time; 2) transfer to a different position; and 3) return to Lane's old private office. (Dkt. 26 at 7–8.)[3] But he only establishes genuine disputes of fact as to the first.

#### 1. Flexible Start Time

Lane sought to move his start time from 7:30 each morning to a flexible start time between 8:00 and 10:00 a.m. (*See* Compl., Dkt. 1, ¶ 19; Dkt. 24-2 at MSJ-329.) Adoption of a flexible work schedule is ordinarily reasonable, *see, e.g., Colwell v. Rite Aid Corp.*, 602 F.3d 495, 503–06 (3d Cir. 2010), so Lane meets his burden of showing facial reasonableness.

The VA must then demonstrate that the request wasn't reasonable. It refused to fully grant Lane's request—offering only to push his start time back to 7:45 a.m—because "[e]ssential functions of timekeeping must be completed daily by . . . 10:00 a.m. on various days," and because Lane's position involved supporting other employees, who would need to know before 10:00 a.m. whether they would have secretarial support. (Dkt. 24-2 at MSJ-329; Dkt. 24-8 ¶ 14; Schabbehar Decl., Dkt. 24-3 at ¶ 40.) The first justification is limited to "various days," so it can't explain why the requested accommodation wouldn't be reasonable on *other* days. And the second doesn't explain why Lane couldn't let his co-workers know whether and when he would come in with an email or a phone call. The VA hasn't shown that Lane's request for a flexible schedule was unreasonable, so the Motion is **DENIED** as to Lane's

---

[3] Lane refers to these as "examples," but the Court doesn't have to guess at which other requests Lane may rely on to establish genuine questions of material fact. *See* Fed. R. Civ. P. 56(c) (parties must "cit[e] to particular parts of materials in the record" to establish genuine disputes of fact).

discrimination claim for failure to reasonably accommodate that request.

### 2. Transfer to Another Department

Lane also informed Schabbehar that he was interested in transferring to another department. (*See* Dkt. 26-1 Ex. B at 12:2–8.) But there's no evidence that this request (if it was a request at all) was intended to accommodate his disability, (*id.* at 12:12–17; Dkt. 26 at 7), and Lane doesn't offer any support for the facial reasonableness of transfer. (*See id.*); *Hamilton v. GlaxoSmithKline, LLC*, 414 F. Supp. 3d 1286, 1295 (D. Mont. 2019) (requesting transfer to a different supervisor not "reasonable on its face"); *see also Dark*, 451 F.3d at 1089 (plaintiff established reasonableness of transfer request by identifying open or soon-to-be-open positions). The Motion is **GRANTED** as to the claim for failure to accommodate Lane's request for transfer to another department.

### 3. Lane's Prior Office

Lane next argues that the VA should have accommodated him by returning him to the private office he worked in before Schabbehar became his supervisor. (Dkt. 26 at 8.) He doesn't provide any authority to suggest that provision of a specific office is reasonable in the run of cases. (*See id.*) And while his past use of that office may qualify as a "special circumstance[] warrant[ing] a finding" of reasonableness*, Barnett*, 535 U.S. at 405, circumstances had made Lane's continued use of that particular office unduly burdensome: not only was that office no longer available, but it was too far away for Lane's new supervisor, Schabbehar, to supervise him effectively. (Dkt. 24-3 ¶¶ 16–20.) The Motion is **GRANTED** as to the claim for failure to accommodate this request.

### 4. Other Requests

Lane hasn't met his burden to show that any other request for accommodation was reasonable on its face—he doesn't identify any factual disputes over any requests but the three the Court discusses above—so the

Motion is **GRANTED** as to Lane's discrimination claim for any other requested accommodation.

### IV. Constructive Discharge

The parties clash over whether Lane establishes genuine factual disputes for his constructive discharge "claim." (*See* Dkt. 26 at 10; Dkt. 28 at 9–10.) But the Complaint doesn't include a claim for constructive discharge. (*See* Dkt. 1.) Nevertheless, a constructive discharge can serve as an adverse employment decision supporting a claim for discrimination. *See Jordan v. Clark*, 847 F.2d 1368, 1377 (9th Cir. 1988). Constructive discharge occurs when, "looking at the totality of the circumstances, a reasonable person in the employee's position would have felt that he was forced to quit because of intolerable and discriminatory working conditions." *Wallace v. City of San Diego*, 479 F.3d 616, 626 (9th Cir. 2007). Both a hostile work environment and adverse employment decisions can support a constructive discharge theory. *See Penn. State Police v. Suders*, 542 U.S. 129, 140–41 (2004).

While constructive discharge is "normally a factual question left to the trier of fact," *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987), courts may resolve it as a matter of law where the plaintiff fails to present facts showing that the situation is "sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job." *Poland*, 494 F.3d at 1186; "An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged." *Id.* at 1185, quoting *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir. 1996).

As a matter of law, Lane fails to present facts sufficient to support his constructive discharge claim. Lane fails to establish the existence of a hostile work environment. *See supra*, Section II. But he can also establish constructive discharge if he presents evidence of adverse employment actions creating

"working conditions so intolerable that a reasonable person in the employee's position would have felt compelled to resign[.]" *Poland v. Chertoff*, 494 F.3d 1174, 1186 (9th Cir. 2007). He relies on several actions that purportedly created a hostile environment: his negative performance review; the purported failure to engage in the accommodation process; the "failure to provide him with effective accommodations;" Schabbehar's "spiteful handling of [his] accommodation requests and use of his old office;" and her "ridiculing him in front of others." (Dkt. 26 at 10.) Taken together, though, Lane hasn't provided sufficient evidence of extraordinary or egregious conditions that would compel a reasonable employee to resign.

As discussed above, the VA *did* engage in the accommodation process, so its purported failure in that regard can't support Lane's constructive discharge theory. And Lane doesn't identify any facts suggesting that Schabbehar's handling of his accommodation requests was "spiteful" or amounted to "harass[ment]." (*See id*.)

That leaves only the performance review, Schabbehar's asserted "riducul[e]," and the denial of Lane's accommodation requests. But Lane fails to present evidence that these were "sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job." *Poland*, 494 F.3d at 1186.

A negative performance review isn't extraordinary. Lane doesn't offer any competent evidence for his assertion that his review was a precursor to termination, but even so, the expectation of eventual termination wouldn't create working conditions so intolerable that a reasonable person would feel compelled to resign.

Schabbehar's behavior towards Lane didn't compel his resignation, either. "[C]om[ing] after" people, sending "very stern e-mails that make [them] feel like their job is in jeopardy," and "trying to shame . . . or ridicule [employees]

in front of [their] peers" may be poor treatment and poor management. But without more, the Court can't conclude that Schabbehar's conduct was out of the ordinary, much less so egregious that a reasonable employee would resign. (*See* Dkt. 26-1 Ex. C at 37:15–40:17).

The VA's denial of Lane's accommodation requests, too, is neither extraordinary nor egregious. The VA: 1) placed Lane in a semi-private office after offering an available private office; 2) didn't transfer him to a different department after he expressed interest in a transfer but didn't apparently connect that interest to his disability; and 3) refused to allow a flexible work schedule. Even if the rigid work schedule may support a discrimination claim, none of these three actions are so extreme that a reasonable person in Lane's position would feel compelled to quit.

The circumstances Lane identifies, individually or taken as a whole, aren't so extraordinary or egregious that they amount to constructive discharge. Lane can't rely on that theory to support any of his claims.

## V.    Retaliation

Lane's claim for retaliation relies on one adverse action: the VA's assessment of Lane's work as "[n]eed[ing] improvement to be Fully Successful" in September 2018. (Dkt. 26 at 4–6.)[4] And while there's evidence that Lane's performance *did* need improvement to meet the VA's standards, Lane provides just enough evidence of pretext to avoid summary judgment on that claim.

Retaliation claims are subject to a three-stage burden-shifting test under

---

[4] As he did with his discrimination claim, Lane argues that this action is just one among several that could support his claim. But again, the Court won't guess at which actions Lane believes are retaliatory or the facts that he believes support that conclusion. As to any action not specifically identified in connection with this claim, Lane doesn't "cit[e] to particular parts of materials in the record" or "show[] that the materials [the VA] cite[s] do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c).

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). A plaintiff must first demonstrate a prima facie case of retaliation: the plaintiff engaged in a protected activity; he was subjected to an adverse employment decision; and there was some causal link between the two. *Folkerson v. Circus Circus Enters.*, 107 F.3d 754, 755 (9th Cir. 1997). The burden then shifts to the defendant to show a non-retaliatory reason for the adverse action it took. *Id.* The plaintiff must then present "specific and substantial" evidence that the defendant's non-retaliatory reason is pretextual. *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003). Even evidence of pretext that "appears weak" "[i]n the face of strong evidence . . . showing legitimate reasons for [the defendant's] actions" is enough to avoid summary judgment. *Yartzoff v. Thomas*, 809 F.2d 1371, 1377–78 (9th Cir. 1987).

### A. Lane Presents a Prima Facie Retaliation Case

Lane establishes each element of a *prima facie* case. The first is that he engaged in protected activity. There's no dispute that Lane's engagement in the Equal Employment Opportunity process from March 2017 forward—including his requests for accommodation in that month, the meetings between Schabbehar, Hines, Lane, and Lane's counsel beginning in March 2018, and his June 19 EEO Complaint—was protected.

There's evidence of the second element, an adverse action, too. Undeservedly negative performance reviews can be adverse employment decisions supporting a claim for retaliation. *Yartzoff*, 809 F.2d at 1375. And at this stage of the analysis, Lane doesn't have to prove that those reviews were "undeserved." *See id.* at 1376 (finding that plaintiff "clearly met" burden to prove prima facie case based on "issuance of a subaverage performance rating" without analyzing whether the rating was deserved). It doesn't matter whether the performance review would lead inexorably to Lane's termination. The adverse action must only "materially affect the terms and conditions of

employment." *See Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000). And while a written warning or a performance improvement plan might not meet this standard, a performance review does. *Compare Sanchez v. California*, 90 F. Supp. 3d 1036, 1056 (E.D. Cal. 2015) (warnings and performance improvement plans) *with Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) ("[I]ssuance of an undeserved negative performance review" can constitute an adverse employment decisions).

The VA tries to avoid this rule by insisting that Lane's progress review wasn't a performance evaluation at all, but "simply a mid-year guidepost . . . not the final annual rating." (Dkt. 28 at 4.) But the document was issued twelve days before the end of a year-long appraisal period, not at "mid-year," and with no time to turn things around before any "final annual rating." (*Id.*; Dkt. 24-1 at MSJ-150, 152.) Lane's evidence of a negative performance review satisfies the adverse action element of his retaliation claim.

The bar for demonstrating the third element, a causal link, isn't high. Where an administrative complaint is involved, it's enough to show "the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d at 1376. When Schabbehar issues the negative performance review, she was aware, at a minimum, of the recent accommodation requests she received and her recent meetings with Lane's counsel. (*See* Dkt. 24-8 ¶¶ 5–7, 12.) This temporal proximity is enough to establish *prima facie* causation.

### B. The VA Provides a Non-Retaliatory Explanation

With Lane presenting a prima facie case of retaliation, the VA must demonstrate a non-retaliatory reason for the negative performance review. It meets this burden. Lane's prior performance review—the first he received from

Schabbehar—identified areas that needed improvement, (Dkt. 24-1 at MSJ-147), but Lane didn't improve. For example, to be considered "Fully Successful" or better in the "Administrative Support" category, Lane needed to have fewer than three erroneous or untimely timecard entries over the course of 2018. (*Id.* at MSJ-150.) Schabbehar's emails to Lane indicate that he had dozens. (*Id.* at MSJ-132–38, 337–39.) Under the standards the VA provided to Lane, that level of performance is below the level warranting a "Fully Successful" or "Exceptional" rating. In other words, he "[n]eed[ed] improvement to be Fully Successful or better" under the stated performance standards, a non-retaliatory reason for giving Lane that rating.

### C. Lane Identifies Sufficient Evidence of Pretext to Avoid Summary Judgment

Lane must then point to specific evidence that this explanation is pretextual. Even evidence that "appears weak" "[i]n the face of strong evidence . . . showing legitimate reasons for [the VA's] actions" is enough to establish a genuine dispute over pretext. *Yartzoff*, 809 F.2d at 1377.[5]

He meets this burden. The VA didn't always apply its standards according to their terms. Lane's timekeeping issues weren't new—only his poor performance rating was. (*See* Godbold Decl. ¶ 6 (Lane's prior supervisor "regularly observed and/or received complaints . . . regarding [Lane's] substantive [timekeeping] errors"); Dkt. 26-1, Ex. B at 20 (Lane was rated "Fully Successful" for several years prior).) The change in Lane's rating without any apparent change in performance clears the low bar for avoiding summary judgment, so the Motion is **DENIED** as to Lane's claim for retaliation.

---

[5] In *Yartzoff*, the evidence was so weak that the court took note of the "many incidia of spuriousness" in the plaintiff's claims and cautioned that "he may well suffer judgment for defense costs and attorneys' fees." *Id.* at 1378.

## CONCLUSION

The bar for avoiding summary judgment is low, but Lane clears it for only two of his claims. The VA's Motion for Summary Judgment is **GRANTED** as to Lane's claims for hostile work environment and failure to engage in the interactive process. The Motion is **GRANTED** as to all bases for the discrimination claim based on failure to accommodate except the VA's failure to provide a flexible start time. It's **DENIED** as to the discrimination claim based on that theory. And it's **DENIED** as to Lane's claim for retaliation.

**IT IS SO ORDERED**.

Dated: July 30, 2021

**HON. LARRY ALAN BURNS**
United States District Judge